IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SCOTT J. SWAIN and KENNY L. FIORITO, on behalf of the ISCO Industries Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-71-RGA-MPT |
| WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

On January 25, 2017, Scott J. Swain ("Swain") and Kenny L. Fiorito ("Fiorito") on behalf of the ISCO Industries, Inc. ("ISCO") Employee Stock Ownership Plan ("ESOP") and similarly situated participants in the ESOP (collectively, "Plaintiffs"), brought this action against defendant Wilmington Trust, N.A. ("Wilmington Trust") for causing and engaging in prohibited transactions forbidden under the Employee Retirement Income Security Act of 1974 ("ERISA") § 406(a)-(b) and 29 U.S.C. § 1106(a)-(b) (Count I).[1]

Presently before the court is Wilmington Trust's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to FED. R.

---

[1] *See* D.I. 1.

CIV. P. 12(b)(1) and 12(b)(6), respectively.[2] For the reasons stated below, it is recommended that Wilmington Trust's motion to dismiss for lack of subject matter jurisdiction be granted. In the alternative, it is recommended that Wilmington Trust's motion to dismiss for failure to state a claim be granted in part and denied in part.

## II.     BACKGROUND

Swain is a resident of Tioga, Pennsylvania, while Fiorito is a resident of Gresham, Oregon.[3] Plaintiffs are and have been participants in the ESOP, pursuant to ERISA § 3(7) and 29 U.S.C. § 1002(7), and are vested in shares of ISCO allocated to their accounts through the ESOP.[4]

ISCO was founded in 1962 by James Kirchdorfer, Sr. and was a family-owned and operated company when the ESOP purchased it in 2012.[5] ISCO is a privately-held S corporation, meaning its stock is not readily tradable on an established securities market.[6] It is headquartered in Louisville, Kentucky and bills itself as a "'global customized piping solutions provider' that 'sells a wide variety of piping materials and provides solutions for various environmental, geothermal, golf, industrial, landfill, mining, municipal, nuclear, waterworks, and culvert-lining applications worldwide.'"[7]

ISCO is the sponsor of the ESOP within the meaning of ERISA § 3(16)(B) and 29 U.S.C. § 1002(16)(B).[8] It is also the administrator of the ESOP as defined by ERISA §

---

[2] D.I. 10.
[3] D.I. 1 at ¶¶ 12-3.
[4] *Id.* at ¶¶ 2, 12-3.
[5] *Id.* at ¶¶ 35-6.
[6] *Id.* at ¶¶ 5, 18.
[7] *Id.* at ¶¶ 16-7.
[8] *Id.* at ¶ 24.

2

3(16)(A) and 29 U.S.C. § 1002(16)(A).⁹

Wilmington Trust is a trust company chartered in Delaware.¹⁰ Wilmington Trust is a wholly-owned subsidiary of Wilmington Trust Corporation, which is headquartered in Delaware.¹¹ In turn, Wilmington Trust Corporation is a wholly-owned subsidiary of M&T Bank Corporation, which is headquartered in Buffalo, New York.¹²

Wilmington Trust was the trustee of the ESOP at the time of the disputed transaction, and was therefore a fiduciary as defined under ERISA.¹³ As trustee, Wilmington Trust had exclusive authority to manage and control the assets of the ESOP, and had sole and exclusive discretion to authorize the disputed transaction.¹⁴ Moreover, as trustee, it was Wilmington Trust's exclusive duty to ensure that any transactions between a potential seller and the ESOP were fair and reasonable, and that the ESOP paid no more than fair market value.¹⁵ Additionally, Wilmington Trust was also a party in interest as defined by ERISA § 3(14) and 29 U.S.C. § 1002(14).¹⁶

The ESOP is a retirement plan governed by ERISA and was implemented on January 1, 2012.¹⁷ The ESOP "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses, and any forfeitures of accounts of other

---

⁹ *Id.* at ¶ 26.
¹⁰ *Id.* at ¶ 14.
¹¹ *Id.*
¹² *Id.*
¹³ *Id.* at ¶ 15.
¹⁴ *Id.*
¹⁵ *Id.* at ¶ 29.
¹⁶ *Id.* at ¶ 15.
¹⁷ *Id.* at ¶¶ 19-20.

3

participants which may be allocated to such participant's account."[18] Since its inception, the ESOP's principal asset has been ISCO stock.[19] The ESOP is intended to be a leveraged ESOP.[20] As of the ESOP's most recent Form 5500 Annual Return/Report of Employee Benefit Program from 2015, the Internal Revenue Service has not issued a determination that the ESOP is qualified under IRC § 401 or 29 U.S.C. § 1007(d)(6), or that the ESOP is, in fact, an employee stock ownership plan under ERISA § 407(d)(6) or 29 U.S.C. § 1107(d)(6).[21]

On December 20, 2012 through a transaction ("the Transaction"), ISCO and/or its prior owner(s) ("Sellers") sold 4 million shares of common stock in the company to the ESOP in exchange for a twenty-five year note of $98 million, accruing 2.4% annual interest.[22] Wilmington Trust represented the ESOP and its participants as trustee.[23] The sale allowed Seller to unload its interests in ISCO at an inflated price and "saddle ESOP participants with millions of dollars of debt, payable to ISCO, to finance the transaction."[24] As a result, ISCO is wholly owned by the ESOP.[25] CSG Partners, LLC ("CSG"), a New York-based boutique investment bank, advised ISCO in the ESOP transaction.[26] CSG claimed it could structure ESOP transactions "such that selling shareholders will continue to control the company, exercising control through the board

---

[18] *Id.* at ¶ 21.
[19] *Id.* at ¶ 23.
[20] *Id.*
[21] *Id.* at ¶ 22.
[22] *Id.* at ¶ 5.
[23] *Id.* at ¶ 6.
[24] *Id.* at ¶ 7.
[25] *Id.* at ¶ 30.
[26] *Id.* at ¶ 32.

4

of directors and other corporate governance tools, even where the ESOP purchases 100% of the company."[27]

As of December 31, 2012, the ISCO shares purchased by the ESOP were re-valued by an independent appraiser at $39 million–a decrease of more than 60%.[28]

## III. STANDARD OF REVIEW

### A. 12(b)(1)

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.[29] Under FED. R. CIV. P. 12(b)(1), the court's jurisdiction may be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts.[30] Where there is a facial attack on jurisdiction, the court must accept as true the allegations contained in the complaint. Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"[31]

Where there is a factual attack, the court is not "confine[d] to the allegations in the . . . complaint, but [may] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."[32] Under this circumstance, "no presumptive

---

[27] *Id.* at ¶ 33.
[28] *Id.* at ¶¶ 45-6.
[29] *See Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).
[30] 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 1997).
[31] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).
[32] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortenson v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891-92 (3d Cir. 1977).

5

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."[33]

Usually, subject matter jurisdiction is decided at the outset of a case, however, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation."[34] A party may first establish jurisdiction "'by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection).'"[35]

### B.    12(b)(6)

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule 8(a)(2) is necessary. It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[36] Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a

---

[33] *Carpet Group*, 227 F.3d at 69 (quoting *Mortenson*, 549 F.3d at 891).
[34] MOORE at § 12.30[1].
[35] *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 597 F. Supp. 2d 462, 466 (D. Del. 2009) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537–38 (1995)).
[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).

claim for relief that is plausible on its face.'"[37] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[38] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[39] "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[40] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[41]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[42] A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions."[43] Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[44] The plausibility standard does not rise to a "probability requirement," but requires "more than

---

[37] *Id.* at 678 (citing *Twombly*, 550 U.S. at 570 (2007)); *see* FED. R. CIV. P. 12(b)(6).
[38] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[39] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).
[40] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).
[41] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).
[42] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).
[43] *Twombly*, 550 U.S. at 555.
[44] *Id.* at 570.

a sheer possibility that a defendant has acted unlawfully."[45] Rejected are unsupported allegations, "bare assertions," or "legal conclusions."[46] Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[47] Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss," which is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[48] Well-pled facts which only infer the "mere possibility of misconduct," do not show that "'the pleader is entitled to relief,'" under Rule 8(a)(2).[49] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[50]

## IV. DISCUSSION

### A. Motion to Dismiss For Lack of Subject Matter Jurisdiction

Wilmington Trust maintains plaintiffs fail to demonstrate subject matter jurisdiction because they lack standing.[51] An underlying issue in the present motion

---

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[46] *Id.* at 678, 681 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).
[47] *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").
[48] *Iqbal*, 556 U.S. at 679.
[49] *Id.*
[50] *Id.*
[51] D.I. 11 at 1-2.

concerns the alleged injury.[52]  Wilmington Trust's challenge is a factual challenge, based on the sufficiency of jurisdictional facts concerning harm to individual accounts of the ESOP and the ESOP itself.[53]  As such, this court is not limited to the allegations in the complaint and does not have to presume these allegations are true.[54]

The Supreme Court recognizes two types of standing that must be satisfied for a court to exercise subject matter jurisdiction:  statutory and constitutional.[55]  At issue is plaintiffs' constitutional standing.[56]  The Supreme Court has clearly pronounced that the burden of establishing Article III standing rests on the plaintiff.[57]  Plaintiffs must establish Article III standing for the equitable, injunctive, and declaratory relief that they seek in the present matter.

### 1. Equitable Relief

There are three elements plaintiffs must meet to establish constitutional standing for equitable relief.[58]  First, the plaintiffs must have suffered an "injury in fact[,] . . . an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."[59]  Second, there must be a causal connection between the complained of conduct and the injury.[60]  Third, it must

---

[52] *Id.* at 8.
[53] MOORE at § 12.30[1].
[54] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).
[55] *Bank of Am. Corp. v. City of Miami*, 197 L. Ed. 2d 678, 686-87 (U.S. 2017).
[56] D.I. 11 at 1.
[57] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016).
[58] *Lujan*, 504 U.S. at 560-61.
[59] *Id.* at 560 (internal quotation marks and citations omitted).
[60] *Id.*

be likely "that the injury will be redressed by a favorable decision."[61] The Supreme Court clarified the difference between "concrete" and "particularized" for this first element in *Spokeo, Inc. v. Robins*, defining a particularized injury as an injury "affect[ing] the plaintiff in a personal and individual way."[62] The Court further defined a concrete injury as being "'de facto,' that is it must actually exist."[63] Here, Wilmington Trust's primary contention relates to the first element of constitutional standing, injury-in-fact.[64] Plaintiffs allege injury both to their individual accounts and to the ESOP.[65] Therefore, this court will analyze both types of alleged harm.

Wilmington Trust contends plaintiffs fail to establish a concrete and particularized injury to their individual accounts.[66] Wilmington Trust further avers plaintiffs must demonstrate concrete and particularized injury to their accounts (by showing, for example, their accounts were actually depleted or otherwise harmed) to prove that an injury-in-fact exists.[67] It notes plaintiffs only allege their accounts were part of the ESOP and the stock acquired was valued substantially less eleven days after its purchase.[68]

---

[61] *Id.* at 561. (internal quotation marks and citations omitted).
[62] *Id.* at 1548.
[63] *Id.*
[64] D.I. 11 at 8.
[65] *See generally* D.I. 1; D.I. 14. (Plaintiffs allege in the complaint: "The ESOP Transaction allowed Seller to unload its interests in ISCO at an inflated price and *saddle Plan participants* with millions of dollars of debt payable to ISCO to finance the transaction. Wilmington Trust failed to *fulfill its duties to the Plan and Plan participants*, including Plaintiffs. Plaintiffs bring this action to recover the *losses incurred by the Plan*, and thus by each *individual account* in the Plan held by them and similarly situated participants, as a result of Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA." (emphasis added))
[66] D.I. 11 at 10.
[67] *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-50 (2016).
[68] D.I. 1 at 8.

Plaintiffs respond to Wilmington Trust's motion: "[e]very participant holding ISCO stock in his or her individual account has been injured by the [ESOP]'s stock overpayment and excessive loan."[69] The Third Circuit has not yet directly ruled on the issue of constitutional standing in this context, but this court has previously decided a similar issue in *In Re Wilmington Trust Corp. ERISA Litigation*.[70] In that case, this court discussed the "artificial inflation theory" that other circuits have accepted and the Third Circuit has alluded to adopting.[71] In analyzing the artificial inflation theory, it concluded "at the initial stages of litigation, the more straightforward approach of artificial inflation should be used to establish injury-in-fact."[72] As our sister circuits have noted, Supreme Court precedent guides: "'an inflated purchase price will not itself constitute. . . economic loss'. . . . Rather, stock must be purchased at an inflated price and sold at a loss for an economic injury to occur."[73] Here, stock was purchased at an allegedly inflated price and no sale occurred thereafter. Therefore, no injury-in-fact can be identified and plaintiffs lack standing necessary for subject matter jurisdiction.

---

[69] D.I. 14 at 10.

[70] See *In Re Wilmington Trust Corp. ERISA Litigation*, 943 F.Supp.2d 478 (D. Del. 2013).

[71] *Id.* at 487. See also *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007).

[72] *In Re Wilmington Trust Corp. ERISA Litigation*, 943 F.Supp.2d 478, 487 (D. Del. 2013).

[73] *Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). The Supreme Court reasoned: "Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will *sometimes* play a role in bringing about a future loss. It may prove to be a necessary condition of any such loss, and in that sense one might say that the inflated purchase price suggests that the misrepresentation. . . 'touches upon' a later economic loss. . . But, even if that is so, it is insufficient. To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." *Dura*, 544 U.S. at 343 (citing 15 U.S.C. § 78u-4(b)(4)).

Plaintiffs similarly allege injury to the ESOP itself through overpayment for stock in the Transaction.[74] As previously discussed, plaintiffs have not alleged or shown how harm to the ESOP by overpaying for the stocks affected them individually and overpayment alone is not sufficient to prove injury-in-fact.[75] Absent an injury-in-fact to plaintiffs, they lack standing to sue for harm to the ESOP.

### 2. Injunctive and Declaratory Relief

To obtain injunctive or declaratory relief, plaintiffs must show "real or irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again . . . ."[76] Plaintiffs can demonstrate this by providing evidence of "actual present harm or the significant possibility of future harm."[77] Plaintiffs allege injuries incurred in the past and provide only a conclusory statement that "they continue to suffer such losses in the present."[78] Plaintiffs weakly counter that Wilmington Trust is the trustee and, as a result, the alleged harm could happen again.[79] This does not prove an actual present harm, nor a "*significant possibility* of future harm."[80] Because plaintiffs do not allege a real and immediate threat of future injury, they lack standing required for injunctive or declaratory relief. Therefore, Wilmington Trust's motion to dismiss for lack of subject matter jurisdiction should be granted.

---

[74] D.I. 1 at 2.
[75] *Dura*, 544 U.S. at 342-43.
[76] *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95,111 (1983)).
[77] *Werner v. Primax Recoveries, Inc.*, 365 Fed. App'x 664, 668 (6th Cir. 2010).
[78] D.I. 1 at ¶ 62.
[79] D.I. 14 at 16.
[80] *Werner*, 365 Fed. App'x at 668 (emphasis added).

**12**

### B. Motion to Dismiss for Failure to State a Claim

Although the analysis and findings above result in dismissal of the entire action, this court will also address Wilmington Trust's motion to dismiss under Rule 12(b)(6) in the alternative.

FED. R. CIV. P. 8, *Twombly*, and *Iqbal* are relevant to the analysis under Fed. R. Civ. P. 12(b)(6).[81] FED. R. CIV. P. 8 requires that a claim for relief must include " a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."[82] Elaborating on FED. R. CIV. P. 8, *Twombly* found that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions."[83] The Court in *Twombly* further held that "factual allegations must be enough to raise a right to relief above the speculative level."[84] The Supreme Court reaffirmed *Twombly* in *Iqbal*, holding "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[85]

#### 1. Claim under ERISA § 406(a)(1)(E) and 29 U.S.C. § 1106(a)(1)(E)

Plaintiffs assert Wilmington Trust violated ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E) by causing the ESOP to acquire ISCO securities.[86] Wilmington Trust maintains that § 406(a)(1)(E) is rendered inapplicable by § 407(b)(1).[87] Plaintiffs

---

[81] *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[82] FED. R. CIV. P. 8.
[83] *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).
[84] *Id.*
[85] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
[86] D.I. 1 at ¶ 49.
[87] D.I. 11 at 15-16; *see also* ERISA § 407(b)(1); 29 U.S.C. § 1107(b)(1).

**13**

respond that § 407(b)(1) applies to EIAPs, which include ESOPs.[88] Plaintiffs further assert that because Wilmington Trust has not proven the ESOP is an EIAP, and since a dispute exists as to the ESOP's status as a "qualified plan" under ERISA § 407(d)(6), thereby making its status as an EIAP disputed, dismissal is improper.[89] Wilmington Trust argues that "nothing in [either] ERISA or the Internal Revenue Code describes that an IRS determination letter is required for a plan to be tax qualified or an ESOP."[90]

Under ERISA § 407(b) and 29 U.S.C. § 1107(b), ERISA § 407(a) and 29 U.S.C. § 1107(a) "do[] not apply to acquisition or holding of any qualifying employer securities . . . by an eligible individual account plan such as an ESOP."[91] A fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . acquisition, on behalf of the plan, of any employer security or employer real property in violation of *[ERISA § 407(a) and 29 U.S.C. § 1107(a)]* of this title."[92] Plaintiffs do not allege the securities purchased by the ESOP are not qualified securities within the meaning of ERISA § 407(a) and 29 U.S.C. § 1107(a).[93] Therefore, ERISA § 406(a) and 29 U.S.C. § 1106(a) are not applicable to this ESOP.[94] Because these statutes are not applicable here, no relief can be granted. Therefore, Wilmington Trust's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should be granted on plaintiffs' claim under ERISA § 406(a)(1)(E) and 29 U.S.C.

---

[88] D.I. 14 at 17-18.
[89] *Id.*
[90] D.I. 15 at 9.
[91] ERISA § 407(b), 29 U.S.C. § 1107(b).
[92] ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E) (emphasis added).
[93] *See generally* D.I. 1; D.I. 14.
[94] *See* ERISA § 407(b), 29 U.S.C. § 1107(b); ERISA § 407(a), 29 U.S.C. § 1107(a); ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E).

§ 1106(a)(1)(E).

### 2. Claims under ERISA § 406(a)(1)(A)-(B) and 29 U.S.C. § 1106(a)(1)(A)-(B)

Plaintiffs, in their complaint, identify "ISCO (the [ESOP]'s sponsor and administrator, whose employees participate in the [ESOP]) or other party in interest sellers" as the party in interest.[95] Wilmington Trust argues plaintiffs fail to identify a party in interest as defined under ERISA.[96] It notes plaintiffs identify ISCO as the party in interest, but contends plaintiffs failed to designate which of the statutory bases[97] they purport ISCO to be a party in interest.[98] ERISA § 3(14)(A)-(I) and 29 U.S.C. § 1002(14)(A)-(I) lists categories of parties in interest applicable to employee benefit plans.[99] Plaintiffs identify ISCO as "the employer sponsoring the [ESOP] and the [ESOP] administrator," falling under one of said categories in ERISA § 3(14)(A)-(I) and 29 U.S.C. § 1002(14)(A)-(I).[100] Plaintiffs also note ISCO is a party to the Loan Agreement and the Stock Redemption and Purchase Agreement, and therefore, is a party in interest involved with the ESOP's transactions.[101] Wilmington Trust's argument that plaintiffs fail to identify which category the party in interest falls into is not convincing.[102] Plaintiffs sufficiently plead enough facts to state a claim and, despite not identifying which category ISCO falls into as a party in interest, provide sufficient facts

---

[95] D.I. 1 at ¶ 49.
[96] D.I. 11 at 16-7.
[97] See ERISA § 3(14)(A)-(I), 29 U.S.C. § 1002(14)(A)-(I).
[98] D.I. 11 at 16.
[99] See ERISA § 3(14)(A)-(I), 29 U.S.C. § 1002(14)(A)-(I).
[100] See id.; D.I. 14 at 18.
[101] D.I. 14 at 18-9.
[102] See D.I. 11 at 16.

to support that ISCO can be identified as such.

Wilmington Trust further contends that the language "other party in interest sellers" is inadequate and warrants dismissal of the complaint.[103] Plaintiffs already allege ISCO as the party in interest and it is reasonable to expect discovery will reveal whether there are other party in interest sellers.[104] Therefore, Wilmington Trust does not show a basis under §406(a)(1)(A)-(B) and 29 U.S.C. §1106(a)(1)(A)-(B) to dismiss.

Finally, Wilmington Trust drops a footnote regarding ERISA § 408 and notes plaintiffs fail to address whether the "exemptions to the prohibited transaction rules do not apply."[105] However, ERISA § 408 provides affirmative defenses, and such defenses, must be plead by defendant.[106] They need not be "plead[ed] around" by plaintiffs.[107] Thus, Wilmington Trust's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should be denied for plaintiffs' claims under ERISA § 406(a)(1)(A)-(B) and 29 U.S.C. § 1106(a)(1)(A)-(B).

### 3. **Claims under ERISA § 406(b) and 29 U.S.C. § 1106(b)**

Wilmington Trust argues that plaintiffs insufficiently pled their claims under ERISA §406(b) and 29 U.S.C. § 1106(b).[108] Under these statutes, a fiduciary is

---

[103] *Id. See also* D.I. 1 at ¶ 49.
[104] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence. . . .").
[105] D.I. 11 at 16-7 n. 7.
[106] *See* ERISA § 408, 29 U.S.C. § 1108.
[107] D.I. 14 at 19.
[108] D.I. 11 at 18.

prohibited from "act[ing] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries"[109] and "receiv[ing] any consideration" from the transaction for a personal account.[110] In their complaint, plaintiffs contend Wilmington Trust acted on behalf of ISCO, the seller, and received compensation for the Transaction.[111]

Wilmington Trust maintains plaintiffs must allege additional factual allegations to support a claim under §406(b).[112] It avers plaintiffs allege no facts supporting "even an inference" that Wilmington Trust acted on behalf of ISCO and, rather, the facts establish that Wilmington Trust acted solely on behalf of the ESOP.[113] Further, Wilmington Trust contends plaintiffs simply provide conclusory allegations, without any supporting facts, that Wilmington Trust received compensation from ISCO for the ESOP.[114] Plaintiffs respond that *Brundle v. Wilmington Trust, N.A.*[115] denied summary judgment when defendant received payment from the employer, a party that dealt with the ESOP.[116] In the instant matter, at the pleading stage, plaintiffs argue, it is "undisputed that Defendant contracted with ISCO to work as trustee in the ESOP transaction and that [p]laintiffs allege it was compensated for the work."[117] However, this precedent is

---

[109] ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).
[110] ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).
[111] D.I. 1 at ¶ 53-4.
[112] D.I. 11 at 17-8.
[113] *Id.* at 17.
[114] *Id.* at 18.
[115] 2016 WL 6542718 (E.D. Va. Nov. 3, 2016).
[116] D.I. 14 at 20.
[117] *Id.*

17

neither binding nor helpful, as the court in *Brundle* denied *both* parties' motions for summary judgment, and provides no guidance as to the pleading standard for an ERISA § 406(b) claim.[118]

Plaintiffs do not provide any additional facts in their pleadings: consequently, the assertions in their complaint are merely conclusory statements.[119] Therefore, plaintiffs fail to adequately plead facts sufficient for claims under ERISA § 406(b) and 29 U.S.C. § 1106(b), and it is recommended that Wilmington Trust's motion be granted on these claims.

## V. CONCLUSION

Consistent with the findings herein, IT IS RECOMMENDED that:

(1) Wilmington Trust's motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) ( D.I. 10) be GRANTED.

(2) In the alternative, Wilmington Trust's motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) (D.I. 10) be GRANTED in part and DENIED in part.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

---

[118] *Brundle*, 2016 WL 6542718, at *15 (E.D. Va. Nov. 3, 2016).
[119] *See* D.I. 1 at ¶ 53 ("Wilmington Trust acted on behalf of Seller in connection with the [ESOP]'s stock and loan transactions in 2012 with Seller by causing the [ESOP] to acquire ISCO stock and a loan"), ¶ 54 ("Wilmington Trust received compensation from ISCO as Trustee for the [ESOP] in violation of ERISA § 406(b)(3)"). *See generally* D.I. 14.

18

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: August 14, 2017

/s/ Mary Pat Thynge
Chief U.S. Magistrate Judge